UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

DAVID CRNKOVICH,

    Plaintiff,

vs.                                                                      Case No. 3:04-cv-254-J-MCR

JO ANNE B. BARNHART, Commissioner of
the Social Security Administration,

    Defendant.
_____/

**MEMORANDUM OPINION AND ORDER**[1]

This cause is before the Court on Plaintiff's appeal of an administrative decision denying his application for Social Security benefits. The Court has reviewed the record, the briefs and the applicable law. For the reasons set forth herein, the Commissioner's decision is **REVERSED** and the matter **REMANDED**.

**I.     PROCEDURAL HISTORY**

Plaintiff filed an application for a period of disability and disability insurance benefits ("DIB") on June 9, 1999, alleging an inability to work since July 2, 1998. (Tr. 54-56). The Social Security Administration ("SSA") denied this application initially and on reconsideration. (Tr. 36-39). Plaintiff then requested and received a hearing before an Administrative Law Judge (the "ALJ") on February 21, 2002. (Tr. 379-439). On May 28, 2002, the ALJ issued a decision finding Plaintiff was not disabled. (Tr. 16-29). On July 7, 2002, Plaintiff filed a Request for Review by the Appeals Council. (Tr. 10-11).

---

[1] The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. (Doc. 12).

The Appeals Council denied Plaintiff's request for review, thus making the ALJ's May 28, 2002 decision the final decision of the Commissioner. (Tr. 4-6). Plaintiff timely filed his Complaint in the U.S. District Court on April 2, 2004. (Doc. 1).

## II.   NATURE OF DISABILITY CLAIM

### A.   Basis of Claimed Disability

Plaintiff claims to be disabled since July 2, 1998, due to damaged lungs after exposure to chemicals in the workplace, right knee pain, anxiety and depression. (Tr. 83, 111).

### B.   Summary of Evidence Before the ALJ[2]

Plaintiff was 39 years of age on the date the ALJ's decision was issued. (Tr. 54). He has a ninth grade education with past relevant work experience as a painter, automobile mechanic's helper, and hotel maintenance worker. (Tr. 84, 89, 96-99). Plaintiff's medical history is summarized in the ALJ's decision. By way of summary, Plaintiff suffered an injury while working for Flagler Hospital as a painter. According to Plaintiff, the paint he was using contained chemicals and his lungs were damaged as a result. Plaintiff went out on workers' compensation in July 1998 and he has not worked since. In July 1998, Plaintiff began seeing Dr. Shriram Maratha for a bronchospasm and for exacerbation of his asthma. Dr. Maratha diagnosed Plaintiff with extrinsic brochospasm provoked by paint fumes and causing an asthma exacerbation. (Tr. 321-322).

---

[2] Because Plaintiff testified that his mental problems were his main cause for not working (Tr. 395-96) and because Plaintiff's appeal addresses mostly his mental impairments, the Court will focus its summary on the medical evidence regarding Plaintiff's mental impairments.

On August 5, 1998, Plaintiff was admitted to Flagler Hospital complaining of chest pains on his right side and shortness of breath. While there, Plaintiff underwent numerous tests, including several stress tests. Because he reported a history of panic attacks, Plaintiff was also evaluated for panic disorder by Dr. Gregory Dent. Dr. Dent noted that Plaintiff advised he had suffered from panic attacks since his late teens. (Tr. 172). Upon discharge on August 7, 1998, Plaintiff was diagnosed with a panic disorder (relatively stable on low dose of Xanax), hypoxia, and bronchospasm secondary to bronchial asthma. (Tr. 146, 172). For his breathing problems, Plaintiff was prescribed bronchodilator therapy and Xanax was continued for his anxiety. (Tr. 146).

Plaintiff began seeing Dr. Richard A. Pud Reid for an evaluation of his asthma. On June 30, 1999, Dr. Reid determined Plaintiff had reached maximum medical improvement and put Plaintiff at 55% total body impairment. (Tr. 187). Dr. Reid released Plaintiff to sedentary work effective June 30, 1999. (Tr. 187).

Throughout 1998 and 1999, Plaintiff continued to see Dr. Dent for treatment of his panic disorder. On March 15, 2000, Dr. Dent prepared a report in which he diagnosed Plaintiff with panic disorder and noted Plaintiff had made good progress. (Tr. 267). Dr. Dent opined that Plaintiff's concentration was good, his memory was intact and his ability to work would be limited by Plaintiff's physical problems rather than any mental problems. (Tr. 266-67).

On June 22, 2000, Plaintiff began treatment for his anxiety and panic disorder with Dr. John Virzi, M.D. At the initial examination, Plaintiff reported he suffered from panic attacks about every two weeks for the last twenty years. (Tr. 345). Plaintiff also reported a problem with anger control. (Tr. 345). Dr. Virzi noted Plaintiff 's speech was

rapid but showed no evidence of hallucinations, delusions or paranoid thought. (Tr. 347). He described Plaintiff's mood as anxious and depressed but noted there was no indication of suicidal thoughts or plans. Dr. Virzi found Plaintiff's memory intact and felt that his concentration was adequate. (Tr. 347). He diagnosed Plaintiff with Panic Attacks (chronic, severe, recurrent) and Explosive Disorder (recurrent). Dr. Virzi assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 59[3] and continued Plaintiff on Xanax for anxiety and prescribed Depakote for Plaintiff's mood swings and explosive disorder. (Tr. 347).

On July 6, 2000, Plaintiff reported he was upset because his Social Security benefits had been denied. (Tr. 344). Dr. Virzi noted that the:

> recommendation from Social Security Supplemental Income and Disability is in error and they recommended that he [Plaintiff] return to work as an engineer in a hotel, which would require him to do some painting. His psychiatric disturbance is being controlled pretty well with medications at this time. However, I don't see him yet, as fully stable to return to work at this time.

(Tr. 344). On July 27, 2000, Dr. Virzi described Plaintiff as less anxious and assigned him a GAF score of 60. (Tr. 343).

On September 21, 2000, Dr. Virzi discontinued Plaintiff's use of Depakote after Plaintiff reported problems. Plaintiff also reported an explosive episode where he threw

---

[3] The GAF scale ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, or unable to care for himself). Diagnostic and Statistical Manual of Mental Disorders - Fourth Edition ("DSM-IV") 32 (4th ed. 1994). A score between 41 and 50 is defined as serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). Id. at 32. A GAF score of 51 to 60 is defined as moderate symptoms ( e.g., flat affect and circumstantial speech, occasional panic attacks ) OR moderate difficulty in social, occupational, or school functioning ( e.g., few friends, conflicts with peers or co-workers ). Id.

a table. Plaintiff claimed it was precipitated by financial concerns. (Tr. 342). Plaintiff also claimed he thought he might be experiencing auditory hallucinations. (Tr. 342). Dr. Virzi prescribed Lithium.

On March 1, 2001, Dr. Virzi reported that Plaintiff was doing very well and was "well stabilized on his medications." (Tr. 338). On May 24, 2001, Plaintiff told Dr. Virzi that he was very anxious regarding the settlement offer for his workers' compensation claim. (Tr. 336). Dr. Virzi recommended to Plaintiff that he not accept such a low offer and that he make an appointment with his attorney. Dr. Virzi assigned a GAF score of 55 to Plaintiff. (Tr. 337). On June 21, 2001, Dr. Virzi noted that Plaintiff was doing well and was stabilized. (Tr. 335). Plaintiff reported that he had settled his workers' compensation claim (despite Dr. Virzi's recommendation not to) and that he had "never felt any better than he has with his present medications." (Tr. 335). Dr. Virzi described Plaintiff as "[g]reatly improved in all areas." (Tr. 335).

The final progress note by Dr. Virzi, dated September 13, 2001 noted that Plaintiff was under financial stress. (Tr. 333). Additionally, Dr. Virzi stated that Plaintiff "is impaired, medically and psychiatrically, hopefully he will be able to receive some Social Security Disability or Social Security Supplemental income as soon as possible." (Tr. 333). Dr. Virzi assigned a GAF score of 53. (Tr. 334).

On January 8, 2002, Dr. Virzi completed an interrogatory requested by the ALJ describing Plaintiff's mental condition. (Tr. 369-74). In the interrogatory, Dr. Virzi reported that he saw Plaintiff on a monthly basis and gave Plaintiff's current diagnosis as panic attacks, major depressive disorder, and bipolar disorder II. (Tr. 369). Based on his assessment of the Plaintiff, Dr. Virzi opined that Plaintiff was extremely limited in

5

his ability to work due to "[e]pisodes of deterioration or decompensation in work or work like settings which cause the individual to withdraw from that situation or to experience exacerbations of signs and symptoms which include deterioration of adaptive behavior." (Tr. 371). Dr. Virzi also rated Plaintiff as extremely limited in his ability to deal with work stresses and function independently. (Tr. 372). Dr. Virzi found Plaintiff's ability to demonstrate reliability markedly limited. (Tr. 374). Finally, Dr. Virzi stated that Plaintiff was moderately limited in his abilities to perform daily activities; maintain social functioning; maintain concentration, persistence and pace; deal with the public; use judgment; maintain attention/concentration; behave in an emotionally stable manner and relate predictably in social situations. (Tr. 370 -74).

### C. Summary of the ALJ's Decision

A plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of not less than 12 months. 42 U.S.C. §§ 416(I), 423(d)(1)(A); 20 C.F.R. § 404.1505. The ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, he is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent

him from doing past relevant work, he is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering his residual functional capacity, age, education, and past work) prevent him from doing other work that exists in the national economy, then he is disabled. 20 C.F.R. § 404.1520(f). Plaintiff bears the burden of persuasion through step four, while at step five, the burden shifts to the Commissioner. Bowen v. Yuckert, 482 U.S. 137, 146, 107 S.Ct. 2287 n.5 (1987).

In the instant case, the ALJ determined Plaintiff met the nondisability requirements of the Act and was insured for benefits at least through the date of the decision. (Tr. 17, 28). At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since his alleged onset date, July 2, 1998. (Tr. 17, 28). At step two, the ALJ found Plaintiff had severe impairments: chronic obstructive pulmonary disease with chronic pulmonary insufficiency, asthma, right knee pain, anxiety with panic attacks, and major depressive disorder. (Tr. 23, 28). At step three, the ALJ determined Plaintiff did not have an impairment, or any combination thereof, which met or equaled any of the impairments listed in Appendix 1, Subpart P of the Regulation No. 4. (Tr. 23, 28).

The ALJ further determined Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work. (Tr. 26, 28). Specifically, the ALJ found Plaintiff was able to:

> stand and walk for 2-4 hours and sit for 6-8 hours in an 8-hour workday. He can lift 10 pounds occasionally and less than 10 pounds frequently. Because of his lung disease, the claimant could not work in areas with concentrated amounts of atmospheric pollutants such as dust, chemical fumes, gases, or perfumes. He would also need to avoid allergens such as grasses, weeds, and chemical cleaners. Because

>> of his mental impairments, the claimant would be restricted to simple, entry level, unskilled jobs. He would also need to work in low stress jobs that do not require significant concentration.

(Tr. 26, 28). In making this determination, the ALJ found Plaintiff's testimony regarding his physical limitations credible but his testimony regarding his mental limitations only partially credible. (Tr. 25). Additionally, the ALJ noted that he only gave the opinion of Plaintiff's treating physician, Dr. Virzi, limited weight because his assessment was not supported by Dr. Virzi's treatment notes. (Tr. 26).

At the hearing, the ALJ utilized the testimony of a vocational expert (the "VE"). The ALJ asked the VE to review Plaintiff's past relevant work. The VE testified that Plaintiff's past relevant work as a painter was medium level, unskilled work; as a mechanic's helper was heavy, semi-skilled work; and as a maintenance worker/painter was medium level, unskilled work. (Tr. 426-27). Accordingly, at step four, the ALJ determined Plaintiff's current functional capacity rendered him unable to perform any of his past relevant work. (Tr. 26, 28).

The ALJ then asked the VE whether any jobs existed in the national economy for an individual of Plaintiff's age, education, past relevant work experience, and residual functional capacity. The VE responded that Plaintiff could perform the jobs of Cafeteria Attendant (DOT 311.677-010), with 140,176 positions in the national economy and 7,253 in the state of Florida; Addresser (DOT 209.587-010), with 22,959 jobs available in the national economy and 1,276 available in Florida; Tube Operator (DOT 239.687-014), with 68,440 jobs available nationally and 1,273 available in Florida; and Surveillance System Monitor (DOT 379.367-010), with 5,396 jobs available in the

national economy and 341 jobs in Florida. (Tr. 428-31). Accordingly, at step five, the ALJ determined that based on Plaintiff's age, educational background, work experience, and residual functional capacity, Plaintiff was "capable of making a successful adjustment to work that exists in significant numbers in the national economy." (Tr. 27-28). Therefore, the ALJ found Plaintiff was not disabled within the meaning of the Social Security Act. (Tr. 28, 29).

### III.     STANDARDS OF LAW

#### A.     The Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389, 390, 91 S.Ct. 1420 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838 (11th Cir. 1982) and Richardson, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Edwards v. Sullivan, 937 F.2d 580, 584 n.3 (11th Cir. 1991); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view

the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Foote, 67 F.3d at 1560; accord, Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

**IV.    ANALYSIS**

Plaintiff argues two issues on appeal.  First, Plaintiff asserts that the ALJ erred in evaluating the findings and opinions of Plaintiff's treating physician, Dr. Virzi.  (Doc. 13). Additionally, Plaintiff argues the ALJ's decision at step five that given Plaintiff's impairments, he was still able to perform other work that exists in the national economy, is not supported by substantial evidence.  Specifically, Plaintiff claims the ALJ erred in posing a hypothetical to the VE which was inconsistent with his findings regarding Plaintiff's residual functional capacity findings.  (Doc. 13).

The Commissioner responds that the decision of the ALJ is indeed based on substantial evidence because the ALJ properly discounted the opinion of Dr. Virzi. (Doc. 14).

**Whether the ALJ erred by discounting the opinion of Plaintiff's treating physician, Dr. Virzi.**

On January 8, 2002, Dr. Virzi completed an interrogatory sent to him by the ALJ. (Tr. 369-374).  In the interrogatory, Dr. Virzi opined that Plaintiff was extremely limited in his ability to work due to "[e]pisodes of deterioration or decompensation in work or work like settings which cause the individual to withdraw from that situation or to experience exacerbations of signs and symptoms which include deterioration of adaptive behavior." (Tr. 371).  Dr. Virzi also rated Plaintiff as extremely limited in his ability to deal with work

stresses and function independently. (Tr. 372). Dr. Virzi found Plaintiff's ability to demonstrate reliability markedly limited. (Tr. 374). Finally, Dr. Virzi stated that Plaintiff was moderately limited in his abilities to perform daily activities; maintain social functioning; maintain concentration, persistence and pace; deal with the public; use judgment; maintain attention/concentration; behave in an emotionally stable manner and relate predictably in social situations. (Tr. 370 -74).

The ALJ gave only limited weight to these opinions by Dr. Virzi because the ALJ determined Dr. Virzi's treatment notes did not support his assessments in the interrogatory. The opinion of a treating physician, such as Dr. Virzi, "'must be given substantial or considerable weight unless 'good cause' is shown to the contrary.'" Phillips v. Barnhart, 357 F.3d 1232, 1240 (11th Cir. 2004) (citing, Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). The Eleventh Circuit has determined "good cause" exists when the: "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's's own medical records." Phillips, 357 F.3d at 1241. In any event, whenever an ALJ decides to disregard the opinion of a treating physician, he/she must clearly articulate the reasons for so doing. Id.

In reaching his decision to discount the opinion of Dr. Virzi, the ALJ incorrectly stated: "Dr. Virzi expressed the opinion that the claimant had marked limitations in completing the activities of daily living, maintaining social functioning, and maintaining concentration, persistence and pace." The undersigned's reading of Dr. Virzi's responses to the interrogatory questions reveals Dr. Virzi rated Plaintiff as only moderately limited in those functions. (Tr. 370-71). Additionally, the ALJ does not

discuss Dr. Virzi's opinions that Plaintiff was: (1) extremely limited in his ability to work due to "[e]pisodes of deterioration or decompensation in work or work like settings which cause the individual to withdraw from that situation or to experience exacerbations of signs and symptoms which include deterioration of adaptive behavior" (Tr. 371); (2) extremely limited in his ability to deal with work stresses and function independently (Tr. 372); and (3) markedly limited in his ability to demonstrate reliability (Tr. 374).

Accordingly, the undersigned will remand the case to the ALJ, with the instruction that he shall review the interrogatory completed by Dr. Virzi, explain in detail the amount of weight afforded to Dr. Virzi's opinions and, if any part of Dr. Virzi's opinions is rejected, explain fully why it is being rejected.[4]

**Whether the ALJ erred at step five by posing an incomplete hypothetical to the Vocational Expert.**

During the hearing, the ALJ posed the following hypothetical to the VE:

> Let's take into consideration a person of the Claimant's age. He's a young person. With his past relevant work as stated by you and with a limited education. And assuming that from the evidence in the record and his testimony that in an eight-hour work day this person can sit up to eight hours and stand up to six hours. Because of his pulmonary problems, he would be prevented from working in an environment where he would be exposed to concentrated amounts of atmospheric pollutants, like dust - - a place that was very dusty - - chemicals, fumes, irritants, and the like. He could lift up to 20 pounds occasionally, like one-third of the work day, ten pounds frequently. He would be limited to a simple,

---

[4] The Court does not believe the ALJ improperly discounted the opinion of treating physician such that the opinion must be accepted as true on remand. Instead, the Court find the ALJ inadvertently misread the interrogatory form and therefore, the Court is unable to discern the amount of weight the ALJ would have afforded Dr. Virzi's opinions had the ALJ properly interpreted the interrogatory.

> entry-level, unskilled job. With only occasional dealing with
> the public. This would be a low stress type of [INAUDIBLE].
> Simple, one, two, three-step. A job that does not require a
> lot of concentration. He doesn't have any problem
> understanding, remembering, and carrying out simple
> instructions. He can do that.
>
> . . . Can you tell us jobs that a person with this [sic]
> restrictions and limitations could perform within the
> parameters and the restrictions that I indicated to you?

(Tr. 428). The VE responded that there were four such jobs: cafeteria attendant, addresser, tube operator and surveillance system monitor. (Tr. 428-431). The ALJ then asked the VE whether the Plaintiff would be able to perform any of those jobs if Plaintiff had the limitation of having:

> to alternate between sitting and standing - - like sitting - -
> sitting for one to two hours for a total of eight hours, and
> standing for up to 45 minutes to an hour. And if he had to
> alternate between doing - - between sitting and standing and
> with the rest of the limitations that I have included, would it
> be possible for this person to perform any of the jobs that
> you have indicated?

(Tr. 431-32). The VE indicated that the cafeteria attendant position would need to be eliminated and perhaps the addresser position. (Tr. 432).

Plaintiff argues that the hypothetical presented by the ALJ was inconsistent with the RFC ultimately adopted by the ALJ. (Doc. 13, p.6). The ALJ determined Plaintiff had the RFC to stand and walk for two to four hours and to sit for six to eight hours in an eight hour workday. (Tr. 26). Plaintiff claims the first hypothetical does not accurately reflect the standing limitations adopted by the ALJ. While the ALJ determined Plaintiff had the ability to stand and walk for only two to four hours in an eight hour day, the hypothetical assumes a claimant who can stand for six hours. Additionally, Plaintiff

13

argues the second hypothetical is also inconsistent.  The second hypothetical assumes a claimant who can stand and walk for 45 minutes to an hour at a time and sit for one to two hours at a time.  The ALJ, however, did not put any limit on the maximum number of hours the hypothetical claimant would stand during the eight hour day.  Accordingly, Plaintiff argues the second hypothetical does not adequately reflect Plaintiff's RFC. (Doc. 13, p.9).

The Commissioner does not provide much of a response to this argument.  The Court notes that "[i]n order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."  Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) (citing, McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987)).  The Court agrees that the first hypothetical does not accurately reflect the Plaintiff's residual functional capacity with respect to standing.  The second hypothetical, albeit, not entirely clear, does adequately reflect the Plaintiff's residual functional capacity.  Although the ALJ did not specifically put a limit on the maximum number of hours the hypothetical claimant could stand, the VE noted that both the surveillance system monitor and tube operator positions could be performed while seated (Tr. 432) and therefore, would comply with the standing limitations adopted by the ALJ.

Plaintiff also argues that the ALJ incorrectly listed the addresser position as one which Plaintiff could perform even though the VE testified that given the second hypothetical, the addresser position would be difficult to perform.  (Doc. 13, p.9).  Again, the Court does not believe the ALJ's inclusion of the addresser position to be reversible error, however, as the case is being remanded for further proceedings, the Court will

ask the ALJ to review the testimony of the VE to determine if the addresser position is one which would be appropriate for Plaintiff given his RFC and the VE's testimony in response to the second hypothetical.

## V.    CONCLUSION

For the foregoing reasons, the Clerk of the Court is directed to enter judgment pursuant to sentence four, 42 U.S.C. 405(g) **REVERSING** Commissioner's decision and **REMANDING** this matter with instructions to (1) review the interrogatory completed by Dr. Virzi, explain the amount of weight afforded to Dr. Virzi's opinions and, if any part of Dr. Virzi's opinions is rejected, explain fully why it is being rejected; (2) review the VE's testimony in response to the second hypothetical dealing with the addresser position; and (3) conduct any other proceedings deemed appropriate.

**DONE AND ORDERED** at Jacksonville, Florida, this  30th  day of June, 2005.

*Monte C. Richardson*
MONTE C. RICHARDSON
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record